**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

TYRONE SMITH,                          :
                                       :        Civil Action No. 14-2602 (JMV)
                    Petitioner,        :
                                       :
          v.                           :        **OPINION**
                                       :
BEVERLY HASTINGS,                      :
                                       :
                    Respondents.       :

APPEARANCES:

Tyrone Smith
New Jersey State Prison
I-Right Cell #7
P.O. Box 861
Trenton, NJ 08625
          Petitioner, *pro se*

Sara Beth Liebman
Union County Prosecutor's Office
32 Rahway Ave.
Elizabeth, NJ 07202
          On behalf of Respondents

**VAZQUEZ**, District Judge

This matter comes before the Court upon the Amended Petition for a Writ of Habeas
Corpus under 28 U.S.C. § 2254 (ECF Nos. 3, 4) filed by Petitioner, an inmate confined in New
Jersey State Prison in Trenton, New Jersey.  Respondents filed an Answer opposing habeas relief.
(ECF Nos. 12, 13.)  Petitioner filed a reply.  (ECF No. 14.)  Petitioner subsequently filed a motion
to compel a hearing date for this matter (ECF No. 18), and an application for a final disposition.

(ECF No. 19.)  For the reasons discussed below, the Court will deny an evidentiary hearing and deny the petition for a writ of habeas corpus on the merits.

## I.      PROCEDURAL HISTORY

On April 9, 2007, Petitioner was convicted in the Union County Superior Court of New Jersey of first-degree aggravated sexual assault, second-degree sexual assault, third-degree endangering the welfare of a child, third-degree aggravated criminal sexual contact and fourth-degree aggravated criminal sexual contact.  *State v. Smith*, Ind. No. 02-04-00595, 2007 WL 162219, at *1 (N.J. Super. Ct. App. Div. Jan. 24, 2007) *certif. denied* 192 N.J. 296.  He was sentenced to an aggregate term of imprisonment for fifty-nine years.  *Id.*

Petitioner appealed.  On January 24, 2007, the Appellate Division affirmed the convictions but remanded for resentencing, and the New Jersey Supreme Court denied certification on July 23, 2007.  *Id.*  On remand, Petitioner was sentenced to an aggregate term of imprisonment for fifty-seven years.  *State v. Smith*, Ind. No. 02-04-00595, 2012 WL 4036697, at *2 (N.J. Super. Ct. App. Div. Sept. 14, 2012) *certif. denied* 213 N.J. 535 (2013).

On March 6, 2007, Petitioner filed a *pro se* petition for post-conviction relief, which he subsequently amended.  *Id.* at *2.  The PCR Court held a hearing, and denied the petition by order dated February 25, 2010.  *Id.*  The Appellate Division affirmed on September 14, 2012, and the Supreme Court denied certification on May 2, 2013.  *Id.* at *3.

Petitioner initially filed a § 2254 habeas petition before the Honorable Katharine S. Hayden in *Smith v. Conway*, Civil Action No. 10-1097, on March 2, 2010.  (ECF No. 5 at 1.)  After Respondents answered, Petitioner filed a new petition in Civil Action 13-3750, which the Honorable Keven McNulty construed as a motion to amend the petition pending before Judge Hayden, and he dismissed Civil Action No. 13-3750.  (*Id.*)  Judge Hayden granted Petitioner's

motion to amend but noted that the amended habeas petition was a mixed petition because Petitioner had not exhausted his judicial misconduct claim.  (*Id.* at 2.)

Judge Hayden directed Petitioner to drop the unexhausted claim and proceed with the other claims or return to state court to litigate the unexhausted claims, and then return with a new habeas petition before the expiration of the statute of limitations.  (*Id.*)  Petitioner responded that he would drop the unexhausted claim and proceed with the habeas petition that was pending before Judge McNulty.  (*Id.*)  Judge Hayden responded by directing the Clerk to file the new petition as a "reapplication" in a new § 2254 proceeding, with an April 17, 2014 filing date.  (*Id.*)  Thus, the present civil action was opened.  Petitioner then filed an amended petition.  (ECF Nos. 3, 4.)

Before this Court is Petitioner's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a person in State Custody, raising all of his exhausted claims;[1] Respondents' Answer; Petitioner's reply; and Petitioner's motion to compel the court to schedule a hearing.

## II.    BACKGROUND

The factual background in this matter was summarized by the New Jersey Superior Court, Appellate Division upon Petitioner's direct appeal.  *See State v. Smith*, Ind. No. 02-04-00595, 2007 WL 162219 (N.J. Super. Ct. App. Div. Jan. 24, 2007).  The state court's factual findings are presumed true unless rebutted by clear and convincing evidence.  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)).  Petitioner was a coach for the Police Athletic League ("PAL").  He coached football and wrestling from 1980 to 1993, and again in 1997.

---

[1] The Amended Petition in this matter consists of the documents at ECF Nos. 3 and 4. The document at ECF No. 4 is the Court's § 2254 habeas form, wherein Petitioner raises three grounds for relief.  However, in the document at ECF No. 3, Petitioner stated his intention to raise all of his exhausted claims, which was his purpose in filing an Amended Petition.  Therefore, the Court will address all of the exhausted claims Petitioner raised on direct appeal and in his PCR proceeding.

Between 1989 and 1994, Petitioner befriended six boys who played football or wrestled for the PAL.  In 1991 and 1992, Petitioner invited the boys to stay overnight at his home on some occasions before a sporting event.  During those overnight stays, Petitioner sexually assaulted the boys.

Petitioner told the boys not to tell anyone, and he gave them gifts of cash and clothing.  In 2001, after several of the boys read a newspaper article about an unrelated child sex abuse case, the boys spoke to each other about Petitioner's assaults on them, and they went to the police.  When Petitioner was arrested, he admitted the boys had slept at his house, but he denied molesting them.  Petitioner was convicted after a twelve-day jury trial.

## III.    DISCUSSION

A.    Standard of Review

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(e)(1) states:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

4

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in United States Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from United States Supreme Court precedent and arrived at a different result than the Supreme Court. *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (citing *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)). The phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta" of the U.S. Supreme Court's decisions. *Williams*, 529 U.S. at 412. An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (quoting *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)).

If a state court order is silent on the reason for a decision on a federal claim, the following presumption applies: "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991). Thus, habeas courts "look through" an unexplained order to the last reasoned decision by the state court. *Id.* at 804.

If there is no explanation in a state court decision denying a federal claim, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. *Harrington v. Richter*, 562 U.S. 86, 98 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Additionally, with respect to claims of ineffective assistance of counsel under § 2254(d), "the question is not whether counsel's actions were reasonable." *Harrington*, 562 U.S. at 105. "The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

B.    Evidentiary Hearing

On April 15, 2016, Petitioner filed a motion to compel this Court to schedule a hearing date

for this matter.  (ECF No. 18.)  8 U.S.C. § 2254(e)(2) provides:

> (2) If the applicant has failed to develop the factual basis of a claim
> in State court proceedings, the court shall not hold an evidentiary
> hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on--
>
>> (i) a new rule of constitutional law, made retroactive to cases
>> on collateral review by the Supreme Court, that was
>> previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously
>> discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to
> establish by clear and convincing evidence that but for
> constitutional error, no reasonable factfinder would have found
> the applicant guilty of the underlying offense.

Petitioner does not state a basis for an evidentiary hearing in this motion.  (*Id.*)  Instead, he appears

to seek a disposition of his petition.

However, in Petitioner's reply (ECF No. 14), he asserts the prosecutor committed

misconduct by representing to this Court, on December 24, 2010, that his trial records "were

devoid," but the documents have now been produced with the explanation that they were

inadvertently archived.  (ECF No. 14 at 2.)  Petitioner contends that none of his court-appointed

attorneys have ever had these documents in their files; therefore, they never filed a proper brief or

appeal, and they never reviewed or investigated any claims.  (*Id.*)

In a cover letter to the exhibits in this proceeding, Respondents stated:

> Some of the files were inadvertently archived, and as a result, certain
> documents from the state record, including the transcript of the PCR
> Hearing dated June 12, 2008, the transcripts of the evidentiary
> hearing dated September 2, 2008, and September 25, 2009, and the

6

> briefs submitted to the New Jersey Appellate Division on appeal of the denial of post-conviction relief, cannot be submitted at this time. The files have been ordered, and when received, respondents will either submit copies or will advise the Court that those documents are still missing.

(ECF No. 12-1 at 2-3.)

On August 25, 2014, Respondents filed all of the documents that had been retrieved from the archives, with the exception of the transcript dated September 2, 2009, because it was "merely a discussion of an adjourned date for the conclusion of the hearing." (ECF No. 13.) The fact that the documents were archived does not indicate that Petitioner's attorneys never had the documents or that they did not have the information necessary to represent Plaintiff. "'Bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing' on a federal habeas petition." *Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) (quoting *Campbell v. Burris*, 515 F.3d 172, 184 (3d Cir. 2008) (citation omitted); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991)).

The records submitted to this Court, particularly Petitioner's counseled appellate briefs and the PCR transcript (ECF Nos. 12-2; 13-1; 13-2, 13-6, 13-7 and 13-8) show that each of Petitioner's attorneys obtained the necessary records and fully and fairly litigated all of the issues raised below. Under such circumstances, 28 U.S.C. § 2254(e)(2) precludes an evidentiary hearing on habeas review. This Court therefore limits its review to the state court records.

In sum, the Court will deny the motion to compel a hearing date. Pursuant to Federal Rule of Civil Procedure 78(b), the Court will review the petition and make a ruling based on the written briefs submitted by the parties.

    C.    <u>Analysis</u>

        1.    <u>Claims Exhausted on Direct Appeal</u>

a.     <u>Jury Charge</u>

In his first ground for relief on direct appeal, Petitioner argued that the trial court's failure to properly instruct the jury on whether the defendant has supervisory or disciplinary power of the victims and stood "*in loco parentis*" to them deprived Petitioner of a fair trial.  The Appellate Division addressed this claim, in pertinent part, as follows:

> On Counts Two and Twenty-five, defendant was charged with aggravated sexual assault under N.J.S.A. 2C:14-2a(2)(b), whereby the "actor has supervisory or disciplinary power over the victim by virtue of the actor's legal, professional, or occupational status...." On Counts Three and Twenty-six, defendant was charged with aggravated sexual assault under N.J.S.A. 2C:14-2a(2)(c), whereby the "actor ... stands *in loco parentis* within the household...." On County Twenty-eight, Defendant was charged with aggravated criminal sexual contact under N.J.S.A. 2C:14-3(a), which incorporates the elements of N.J.S.A. 2C:14-2(2)(b) and (c).
>
> . . .
>
> On Counts Two and Twenty-five, the jury was instructed that it could not convict defendant of first-degree aggravated sexual assault unless it found beyond a reasonable doubt that defendant had "supervisory and disciplinary power over the victim, by virtue of [his] legal, professional, or occupational status." For Counts Three and Twenty-six, the jury was instructed that it could not convict defendant of first-degree aggravated sexual assault unless it found beyond a reasonable doubt that defendant stood in the place of the victim's parents. For Count Twenty-eight, the jury was instructed that in order to convict, it had to find beyond a reasonable doubt that defendant had supervisory or disciplinary power over the victim, by virtue of his legal, professional, or occupational status, and/or defendant stood in the place of the victim's parents.
>
> During the initial jury charge, the court did not elaborate on the meaning of "supervisory or disciplinary power over the victim by virtue of defendant's professional or occupational status" or "in place of parents"; only that they were elements the State was required to prove with respect to the charges for aggravated sexual assault and aggravated sexual contact. The jury asked a question about "supervisory versus in place of parents." The trial judge responded, "[t]hey don't give a definition of supervisory or disciplinary. You have to take the facts as you find them and apply it to that charge."

8

During deliberations, the jury asked for a definition of "supervisory/disciplinary power." The judge responded:

> I [can] only give you what Webster's tells us because the law does not provide an exact definition. To supervise, according to Webster's New Collegiate Dictionary, means to superintend or oversee.[ ] Superintend means to have or exercise the charge and oversight of or to direct . . . therefore, supervisory power is the power or the authority to oversee, direct or exercise charge over.

> Discipline, according to Webster's, means, A, to punish or penalize for the sake of discipline. B, to train or develop, by instruction and exercise, especially in self-control. C, to bring under control. So, again, disciplinary power is the power of authority to do those things.

The jury also indicated that it was "confused about how to distinguish between supervisory and parental (in place of parents)" and whether one standard was "higher" than the other. The trial judge responded with a definition of *in loco parentis* as follows: "According to *Black's Law Dictionary* it means in the place of a parent, instead of a parent, or charge factitiously with a parent's rights, duties and responsibilities." The jury was instructed to "[u]se a common sense application of those terms ... and [not to] compare the standards in each ... because they are separate crimes and they do have separate elements." In response to another jury question, the judge explained that *in loco parentis* was not "from the perspective of the child" but was a factor for the jury to determine.

. . .

 "[C]lear and correct jury instructions are essential for a fair trial." *State v. Koskovich*, 168 N.J. 448, 507 (2001) (quoting *State v. Brown*, 138 N.J. 481, 522 (1994)). "The charge must be read as a whole in determining whether there was any error." *Torres, supra*, 183 N.J. at 564. Further, "[i]t is firmly established that '[w]hen a jury requests a clarification,' the trial court is 'obligated to clear the confusion.' "*State v. Savage*, 172 N.J. 374, 394 (2002) (quoting *State v. Conway*, 193 N.J.Super. 133, 157 (App.Div.), *certif. denied*, 97 N.J. 650 (1984)).

. . .

[W]e are satisfied that the court adequately responded to the jury's inquiries. The jury was provided with the dictionary definitions of "supervise" and "discipline," which, when combined with the

testimony regarding the relationship between defendant and each of the victims as presented through the State's witnesses, sufficiently equipped the jury with the background necessary to make the determination that defendant had a certain power over the victims because of his status as their coach and father-figure. Concerning the charges under N.J.S.A. 2C:14-2a(2)(c) and the factors for determining whether defendant stood *in loco parentis*, the court's jury instruction included the legal definition of the term from *Black's Law Dictionary*.

We conclude the trial judge's initial charge, plus the detailed responses to the jury's questions, sufficiently instructed the jury on how to determine whether the State met its burden of proof on the elements of aggravated sexual assault and contact. . . .

*State v. Smith*, 2007 WL 162219, at *3-4.

To find a constitutional due process violation, "[t]he question is 'whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'" *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). The instruction must be "viewed in the context of the overall charge." *Id.* (quoting *Boyde v. California*, 494 U.S. 370, 378 (1990) (quoting *Cupp*, *supra*, at 146-147.)   When the charge as a whole is ambiguous, the question is "whether there is a 'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Id.* (quoting *Estelle, supra*, at 72) (quoting *Boyde, supra*, at 380).

The Appellate Division applied the correct standard for reviewing an allegedly faulty jury instruction by viewing the instruction in the context of the overall charge. Although the jury had some difficulty distinguishing between supervisory and *in loco parentis*, it was not objectively unreasonable for the Appellate Division to conclude the trial court's use of the dictionary definitions adequately addressed the meanings of the two phrases. The definitions may overlap insofar as parents have supervisory and disciplinary authority over their children, but a parent's "rights, duties and responsibilities" suggests a broader, more complex relationship. This is not

10

beyond the ken of an average juror, so as to suggest the jury applied the instruction in a way that violates the Constitution. Therefore, Petitioner has not shown that the Appellate Division's decision was contrary to or involved an unreasonable application of governing federal law.

   b.   <u>Constitutional Right to Present a Defense</u>

Petitioner's second claim for relief on direct appeal was that the trial court deprived him of his constitutional right to present a defense by precluding him from presenting exculpatory evidence pursuant to N.J.R.E. 804(B)(1)(A).  The Appellate Division denied this claim, stating:

> During the course of the trial, one of the victims, P.D., alleged that an individual by the name of A.H. had been present when he was molested by defendant, and that A.H. himself had been molested by defendant. Defendant, after ascertaining that A.H. was not available to testify at trial, moved pursuant to N.J.R.E. 804(b)(1)(A) to introduce A.H.'s sworn statement, in which he denied that he was ever sexually abused by defendant and that he ever witnessed defendant sexually abusing anyone else. This statement was taken by Detective DeRosa on July 3, 2001, during the investigation of the matter.
>
> Defendant argues that his Sixth Amendment "right to present a [complete] defense was violated when the trial court prohibited defendant from introducing the exculpatory statement of A.H. pursuant to N.J.R.E. 804(b)(1)(A)." Specifically, defendant contends that the sworn statement A.H. gave to the police during their investigation satisfied the criteria of N.J.R.E. 804(b)(1)(A) and should have been admissible. Defendant asserts that the statement was exculpatory because A.H. denied being sexually abused by defendant, and that the statement was necessary to impeach the credibility of P.D., who had alleged that A.H. had been present during an incident and that he had witnessed A.H. being molested by defendant as well. We find the argument is without merit.
>
> Hearsay is defined as a "statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." N.J.R.E. 801(c). Hearsay is not admissible unless the rules of evidence or other law permits it. N.J.R.E. 802. N.J.R.E. 804(b)(1)(A), an exception to the hearsay rule, provides in pertinent part that the testimony of an unavailable witness is not excluded by the hearsay rule where it is:

> given by a witness at a prior trial of the same or a different matter, or in a hearing or deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered had an opportunity and similar motive in the prior trial, hearing or proceeding to develop the testimony by examination or cross-examination.

> Defendant relies on *State v. Gentile*, 331 N.J.Super. 386 (Law Div.2000), as support for his argument that the statement should have been admitted under N.J.R.E. 804(b)(1)(A). In *Gentile*, the defendant sought to use the grand jury testimony of an unavailable witness that supported his self-defense theory. *Id.* at 389. In granting the defendant's motion to admit the witness's grand jury testimony, the trial court ruled that the testimony satisfied all the conditions governing admissibility under N.J.R.E. 804(b)(1)(A) because the State had "the opportunity and a similar motive to examine the exculpatory portions of [the witness's] testimony before that body." *Id.* at 396-97.

> Here, the judge correctly determined that A.H.'s statement to the police was not admissible pursuant to N.J.R.E. 804(b)(1)(A). A.H.'s statement to the police was not given "at a prior trial," or "in a hearing or deposition," nor did the prosecution have an opportunity or motive to cross-examine A.H.

*State v. Smith*, 2007 WL 162219, at *6-7.

*Nevada v. Jackson* provides the clearly established federal law governing a habeas claim that a defendant was deprived of his right to present a complete defense:

> "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense," *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)), but we have also recognized that "'state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials,'" *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (quoting *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998)).

> Only rarely have we held that the right to present a complete defense
> was violated by the exclusion of defense evidence under a state rule
> of evidence. [citations omitted]

133 S.Ct. 1990, 1992 (2013).

The Appellate Division explained that under New Jersey law, hearsay is inadmissible unless permitted under the rules of evidence or other law.  A.H.'s statement was not admissible because it was not made at a prior trial or in a hearing or deposition taken in compliance with the law.  There is a rational basis for such rule because the parties did not have an equal opportunity to explore the veracity of A.H.'s statement.

Petitioner seems to believe that A.H.'s statement was made before a grand jury.  (*See* Am. Pet., ECF No. 3 at 8, ¶7.)   The state court record clearly indicates that the statement was made to Detective DeRosa on July 3, 2001, and it was provided to defense counsel in discovery.  (Trial Transcript, ECF No. 12-15 at 18-19, 59.)  There is nothing in the record suggesting A.H. testified before the grand jury.

Here, clearly established federal law requires respect for the state court evidentiary ruling because there is a rational basis for the rule.  *See Holmes v. South Carolina*, 547 U.S. 319, 331 (2006) (finding evidentiary rule did not serve any discernible purpose).  The Appellate Division's denial of the claim was not contrary to nor did it involve an unreasonable application of federal law.  Therefore, the Court will deny habeas relief on this claim.

c.   Prosecutorial Misconduct

Petitioner's third claim for relief on direct appeal was that prosecutorial misconduct deprived him of his right to a fair trial.  The Appellate Division denied the claim:

> Defendant argues next that he was denied a fair trial because the
> prosecutor "engaged in misconduct during his closing argument by
> unfairly eliciting excessive sympathy for the victims." Defendant
> challenges the following statements.

13

While discussing why men "don't make up stories about being a sexual play thing for a man," the prosecutor stated that, "[m]en don't cry. [P.D.] busted in half here. I don't know how to simulate crying. That kid lost it. Wouldn't do that unless something terrible happened to him." The prosecutor then stated:

> I mean, [T.D.], crying, screaming, whatever? I mean, it was-that kid was torn apart. You are never going to see more raw emotion in your lives as when you saw him up there. Something terrible happened to that kid, man, whatever, young man. Men don't cry like that. They don't-they act out.

Next, defendant objects to the following: "I almost wish [T.D.] could sum up. I could rip out my heart and throw it on the table and I could never touch the passion that that kid could to describe to you what happened to him. There is no question that he's carrying around something terrible." Finally, defendant specifically objects to the prosecutor's comment that:

> [t]he idea that they could conspire and set up this 30 trillion dollar fiasco is absurd. These kids came in here as raw, and as real, and as heartful [sic] and they spilled it out, they bled on the stand for you and told you what happened to them. You know he's guilty.

. . .

During the court's charge, the court instructed the jury that it was its duty "to weigh all of this evidence calmly, without bias, without passion, without prejudice, without any sympathy." The trial court also instructed the jury several times that arguments of counsel are not evidence, and that a witness's appearance and demeanor goes to the credibility of that witness.

. . .

In considering issues of prosecutorial misconduct, the reviewing court must first determine whether misconduct occurred. *State v. Frost*, 158 N.J. 76, 83 (1999). Where misconduct is identified, it does not constitute grounds for reversal unless it was so egregious that it deprived the defendant of a fair trial. *State v. DiFrisco*, 137 N.J. 434, 474 (1994), *cert. denied*, 516 U.S. 1129, 116 S.Ct. 949, 133 L. Ed.2d 873 (1996). Thus, to warrant reversal, a prosecutor's misconduct must constitute a clear infraction and "substantially prejudice the defendant's fundamental right to have a jury fairly

evaluate the merits of his [or her] defense." *State v. Roach*, 146 N.J. 208, 219, *cert. denied*, 519 U.S. 1021, 117 S.Ct. 540, 136 L. Ed.2d 424 (1996).

Whether a prosecutor's misconduct denied a defendant a fair trial requires consideration of both the "tenor of the trial and the responsiveness of counsel and the court to the improprieties when they occurred." *State v. Timmendequas*, 161 N.J. 515, 575 (1999), *cert. denied*, 534 U.S. 858, 122 S.Ct. 136, 151 L. Ed.2d 89 (2001).

. . .

Defendant's arguments about prosecutorial misconduct in the closing argument are weakened when reviewed in context because the prosecutor's remarks were responsive to arguments made by defense counsel in his summation regarding his theory that the charges had been fabricated for revenge and financial gain. Indeed, "we review the challenged portions of a prosecutor's summation in the context of the entire summation." *State v. Vasquez*, 374 N.J.Super. 252, 262 (App.Div.2005). . . .

In the context of the highly emotional trial and in light of defendant's theory that the charges were fabricated, the prosecutor's references to the emotional state of the victims during their testimony were not error. Although the prosecutor's statements could certainly be viewed as an appeal to the jury's sympathy, defense counsel objected and requested that the court charge the jury it is not to base its verdict on sympathy. The judge gave such a charge, and members of a jury are duty-bound to follow the court's instructions faithfully. *State v. Compton*, 304 N.J.Super. 477, 483 (App.Div.1997), *certif. denied*, 153 N.J. 51 (1998). In the absence of contrary evidence, an appellate court must assume that the jury followed the instructions delivered by the trial court. *State v. Martini*, 187 N.J. 469, 477 (2006) (quoting *State v. Marshall*, 173 N.J. 343, 355 (2002)).

*State v. Smith*, 2007 WL 162219, at *7-8.

It is clearly established federal law that prosecutorial misconduct violates a defendant's right to due process when the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). A court must examine the prosecutor's actions in the context of the entire trial "assessing the severity of the conduct, the effect of the curative instructions, the quantum of the

15

evidence against the defendant, and the effect of curative instructions." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001).

The Appellate Division applied clearly established federal law to determine whether the prosecutor's alleged misconduct violated Petitioner's due process right to a fair trial.  Moreover, the Appellate Division did not apply the standard in an objectively unreasonable manner by considering the emotional nature of the trial, that the defense opened the door to the issue of whether the victims' emotions were genuine, and that the court instructed the jury not to base their decision on sympathy instead of credibility.  Petitioner has not met the high standard for habeas relief on this claim of prosecutorial misconduct.

Petitioner raised a second claim of prosecutorial misconduct on direct appeal, which the Appellate Division discussed as follows:

> In his supplemental *pro se* brief, defendant also alleged that, during a pretrial hearing, the prosecutor elicited false testimony regarding the age of T.S., who was one of the alleged victims not listed in the indictment because of the statute of limitations. During the 404(b) hearing, T.S. testified that he was twenty-five years old at the time of the trial and he was born on October 11, 1975. In January 2003, T.S. would have actually been twenty-seven years old. Although we agree that there was obviously a mistake, whether intentional or otherwise, there was no prejudice to defendant because T.S. did not testify before the jury.

*State v. Smith*, 2007 WL 162219, at *9.

Petitioner's prosecutorial misconduct claim based on this mistake is meritless.  Petitioner was not deprived of a fundamentally fair trial based on testimony in a pre-trial hearing that was never presented to the jury.  The Court will denies this claim.

> d.     Whether the sentence violated the right to trial by jury or due process

On direct appeal, Petitioner argued that his sentences violated his Sixth Amendment right to trial by a jury under *Blakely v. Washington*, 542 U.S. 296 (2004), because the trial court imposed

sentences above the then-presumptive term.  Petitioner also challenged the aggregate fifty-nine year sentence as manifestly excessive, in violation of his right to due process.   The Appellate Division granted resentencing on Counts Seventeen and Twenty-Five because the sentences on those counts exceeded the then-presumptive term, as conceded by the State.  *State v. Smith*, 2007 WL 162219, at *9.  This cured the *Blakely* violation, leaving only the claim that the aggregate sentence was manifestly excessive.

Upon resentencing, Petitioner was sentenced to an aggregate term of fifty-seven years. *State v. Smith*, 2012 WL 4036697, at *2.  The Appellate Division found the aggregate sentence [prior to resentencing] was not excessive given the sentencing court's findings that the offenses were committed in an especially heinous manner because defendant gave the victims money and gifts for their silence, and there was a need to deter defendant and others from such crimes.  *State v. Smith*, 2007 WL 162219, at *11.

It is clearly established federal law that a particular sentence for a term of years violates the Eighth Amendment when the sentence is grossly disproportionate to the crimes.  *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).  The Supreme Court has noted that the precise contours of the "grossly disproportionate" principle are unclear, but the principle is applicable only in an "exceedingly rare" and "extreme" case.  *Id.* at 73 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (KENNEDY, J., concurring in part and concurring in judgment)).

Petitioner has not identified a Supreme Court case with similar facts to his case where the Court found the sentences grossly disproportionate.  Therefore, this Court must ask whether the state court's application of the grossly disproportionate principle was objectively unreasonable. *Lockyer*, 538 U.S. at 75 (citing *Williams v. Taylor*, 529 U.S. at 409.)  "If the defendant fails to

demonstrate a gross imbalance between the crime and the sentence, a court's analysis of an Eighth Amendment challenge is at an end." *U.S. v. Burnett*, 773 F.3d 122, 137 (3d Cir. 2014).

Petitioner was sentenced on seven counts involving sex crimes against three victims who were children under his care at the time the crimes were committed. The crimes had a devastating impact on the victims. There is nothing grossly disproportionate about an aggregate fifty-seven year sentence for these multiple crimes against multiple victims. *See U.S. v. Walker*, 473 F.3d 71, 82-83 (3d Cir. 2007) (fifty-five year mandatory consecutive sentence for three violations of use of firearm during crime of violence or drug trafficking crime did not violate proportionality principles of Eighth Amendment.)

### e.    Right to an impartial jury

In his *pro se* supplemental brief on direct appeal, Petitioner raised a Sixth Amendment challenge based on the trial court's failure to provide a jury instruction or declare a mistrial when it learned that there was a newspaper in the jury room containing a story about Petitioner's trial and a picture of defendant in handcuffs. The Appellate Division addressed this claim:

> In his supplemental *pro se* brief, defendant argues that the judge abused his discretion in not questioning each juror individually or declaring a mistrial after a copy of the Newark Star-Ledger, containing a story about the trial with the headline "Ex-Football Coach" and a "full blown" picture of defendant in handcuffs, was found in the jury room. . . . Defendant contends that the trial court abused its discretion when the court accepted juror Sison's representation that he had not viewed that part of the photograph showing defendant in handcuffs and by not declaring a mistrial.
>
> The Sixth and Fourteen Amendments to the United States Constitution and Article I, Paragraph 10, of the New Jersey Constitution guarantee the right to a fair trial by an impartial jury. *State v. Papasavvas*, 163 N.J. 565, 643 (2000), *mod. on other grounds*, 164 N.J. 553 (2000); *State v. Williams*, 93 N.J. 39, 60 (1983); *State v. Scherzer*, 301 N.J.Super. 363, 422-23 (App.Div.1997), *certif. denied*, 151 N.J. 466 (1997). Jurors "must be 'as nearly impartial as the lot of humanity will admit.' "*State v.*

*Fortin*, 178 N.J. 540, 575 (2004) (quoting *State v. Williams*, supra, 93 N.J. at 60). "It is axiomatic that an impartial jury is a necessary condition to a fair trial." *State v. Williams*, supra, 113 N.J. at 409.

This guarantee protects a defendant from substantial pre- and mid-trial publicity. *Sheppard v. Maxwell*, 384 U.S. 333, 362-63, 86 S.Ct. 1507, 1522, 16 L. Ed.2d 600, 620 (1966); *Timmendequas*, *supra*, 161 N.J. at 551. "It has long been recognized under the federal constitution that a defendant is entitled to a jury that is free of outside influences and will decide the case according to the evidence and arguments presented in court in the course of the criminal trial itself." *Williams*, supra, 93 N.J. at 60 (citing *Patterson v. Colorado*, 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L. Ed. 879, 881 (1907)). The jury's verdict must be based on the evidence that is adduced in open court. *State v. Bey*, 112 N.J. 45, 75 (1988).

. . .

Prior to the start of the trial, the judge instructed the jury not to read or listen to accounts of the case and he specifically warned that such accounts were not evidence, and may not be accurate or complete. On numerous occasions throughout the trial, the judge again instructed the jurors not to read any newspaper articles or listen to radio discussions about the case.

At the start of the proceedings on February 5, 2003, the trial judge noted that the county section of that day's Newark Star Ledger newspaper contained a picture of defendant in handcuffs. The judge indicated that he intended to question the jury as a whole to see if any jurors saw the newspaper and then conduct individual voir dire of those jurors in chambers. Defendant did not object to this procedure. When the judge asked the jury if anyone saw the paper, juror Sison answered affirmatively.

. . .

[After conducting voir dire of juror Sison and finding he had not read the article or seen the photograph of Petitioner in handcuffs] [t]he court then gave the following instruction to the jury:

> All right. Ladies and gentlemen, as I said throughout this case, what's in a newspaper article isn't evidence and it can't be considered by you. So in leaping [sic] though a newspaper or in listening-I hear this case has been on the radio, too. If you hear a little blurb on the radio, please shut it off. If you see something in the paper, again, do as Mr. Sison did. Just

set it aside. Don't look at it except to identify that it's possibly the subject matter of this trial. Okay?

Again, even though [sic] a brief glimpse that you have of a photograph or something to determine that the article has to do with this case can't be considered by you because it is not evidence. Your decision has to be based on the evidence that comes out during the course of the trial and not in anything you read or hear in any media source.

Defendant did not object to this instruction, nor request any further action.

We are satisfied that the trial court did not abuse its discretion in failing to conduct individual voir dire of each juror, or in failing to declare a mistrial that was never requested. The jury was instructed on numerous occasions to avoid exposure to news articles on the case, and, according to the voir dire of the one juror who admitted to seeing part of defendant's picture in the paper, the juror set the article aside without reading it, or looking at the remaining part of the picture below the fold. As the court noted, there was no indication that the juror saw the handcuffs or that any other jurors were exposed to the picture or the article. Although a copy of the newspaper with defendant's picture was found in the jury room, there was no indication that the section with defendant's picture was visible when it was found. We are satisfied that the trial court did not abuse its discretion in conducting its voir dire of the jury and by not declaring a mistrial that was never requested.

*State v. Smith*, 2007 WL 162219, at *12-14.

"[J]uror exposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged alone" does not presumptively deprive the defendant of due process." *Murphy v. Florida*, 421 U.S. 794, 799 (1975). The constitutional question is whether, under the totality of the circumstances petitioner's trial was fundamentally unfair. *Id.* Although jurors must be impartial, they need not be totally ignorant of the facts and issues involved. *Id.* at 800. "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* at 800 (citing *Irvin v. Dowd*, 366

20

U.S. 717, 723 (1961)).  "[I]t remains open to the defendant to demonstrate 'the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.'"  *Id.*

In *Murphy*, seven jurors were exposed to various news accounts relating to the defendant's prior convictions and information related to his current charge.  *Id.* at 797.  The trial judge denied a motion for a mistrial because the jurors assured that they could maintain impartiality in spite of the articles.  *Id.*  The Supreme Court reviewed the voir dire and found no indication of hostility to the petitioner to suggest that they could not remain partial.  *Id.* at 800.  The Court held that the "petitioner has failed to show that the setting of the trial was inherently prejudicial or that the jury-selection process of which he complains permits an inference of actual prejudice."  *Id.* at 803.

Furthermore, the Constitution does not require interrogation of each individual juror with respect to what the juror read and heard about the case because jurors need not "'be totally ignorant of the facts and issues involved.'"  *Mu'Min v. Virginia*, 500 U.S. 415, 430-31 (1991) (quoting *Irvin*, 366 U.S. at 722.))  Trial courts are provided wide discretion in conducting voir dire in areas of inquiry "that might tend to show juror bias."  *Id.* at 427.

As discussed above, the Constitution does not require the trial court to interrogate each individual juror about what he or she read or heard about the case outside of the trial.  There is nothing in the state court record to suggest there was any juror who could not maintain impartiality despite the presence of the article in the newspaper.  Only one juror said that he saw the newspaper, but he did not view the part of the photograph that showed Petitioner in handcuffs, nor did he read the article.  The trial court properly instructed the jury that information in the news is not evidence and cannot be considered by the jury.  Petitioner has not pointed to anything in the record which indicates the jury could not follow this instruction.  Therefore, the Appellate Division's denial of

the claim did not involve an unreasonable application of clearly established federal law.  The Court will deny this claim.

2. <u>Claims exhausted in PCR Court</u>

Petitioner's first claim for relief in his PCR proceeding was ineffective assistance of counsel based on the following:  (1) failure to conduct an adequate investigation and interview witnesses; (2) failure to consult with defendant in a meaningful manner; (3) failure to elicit evidence of defendant's scar; (4) failure to object to jury charge; (5) failure to file a severance motion; and (6) failure to file a motion to dismiss on speedy trial grounds.  *State v. Smith*, 2012 WL 4036697, at *2-3.

The Appellate Division analyzed Petitioner's ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Id.* at *3.  The Appellate Division noted that:

> To prevail on a claim of ineffective assistance of counsel, defendant must meet the two-prong test of establishing both that: (l) counsel's performance was deficient and he or she made errors that were so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* (quoting *Strickland*, 466 U.S. at 687.)  The court gave deference to the credibility findings made by the PCR Court, Judge Moynihan, at the PCR hearing.  *Id.*

a. <u>Failure to conduct investigation and interview witnesses</u>

In rejecting this claim of ineffective assistance of counsel, the Appellate Division held:

> . . . Judge Moynihan observed that defendant had failed to present any affidavit or certification from any of the witnesses to show what they would have said if called at trial. Pursuant to Rule 3:22−10(c), defendant was required to present a certification by that witness

22

>concerning the testimony the witness would have been prepared to give. *See State v. Petrozelli*, 351 N.J.Super. 14, 23 (App.Div.2002); *State v. Cummings*, 321 N.J.Super. 154, 170–71 (App.Div.), *certif. denied*, 162 N.J. 199 (1999). In the absence of such evidence, Judge Moynihan correctly concluded that defendant had failed to meet either of the prongs of the *Strickland/Fritz* test to show that relief was warranted.

*State v. Smith*, 2012 WL 4036697, at *3.

The Appellate Division applied the correct standard described in *Strickland* to assess Petitioner's ineffective assistance of counsel claim. Furthermore, the Appellate Division's application of *Strickland* was objectively reasonable. To establish prejudice under *Strickland* based on counsel's failure to interview and present witnesses, the petitioner must present more than "mere speculation about what the witnesses [that counsel] failed to locate might have said." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (quoting *Gray*, 878 F.2d at 712.)) Petitioner did not present such evidence on PCR, although he was given the opportunity to do so. (ECF No. 13-6 at 2-5.) Instead, he chose to argue that he shouldn't have to present such evidence, and he was entitled to relief nonetheless. (*Id.*) Petitioner was mistaken. Therefore, the Court will deny this claim.

b. Failure to consult with defendant in a meaningful manner

The Appellate Division noted that there was conflicting testimony at the PCR hearing about how many times defense counsel met with the defendant before trial. *State v. Smith*, 2012 WL 4036697, at *4. Counsel testified they met ten to twelve times for at least an hour per visit. *Id.* Petitioner testified they never met before trial and only twice during trial. *Id.* The Appellate Division noted:

>Judge Moynihan compared defendant's assertions to his testimony at the PCR hearing and the actual trial record, with specific references to defendant's testimony that his counsel had failed to follow up on specific issues he raised with him; that he discussed his

> decision to testify at trial; that the "extensive direct examination" of defendant at trial was "well-prepared"; that in response to counsel's complaint about problems in meeting with defendant during the trial, the court had remanded defendant to the Union County Jail and allowed time for consultations prior to a pre-trial hearing and prior to trial. Judge Moynihan noted that trial counsel was prepared for all legal arguments and cited specific examples of his preparedness and effectiveness at trial, concluding, "From opening to summation he was clearly well-versed and well prepared to handle the case." As Judge Moynihan concluded, defendant has failed to show that his counsel's performance was deficient, let alone that his rights to a fair trial were prejudiced.

*Id.*

The Appellate Division, like Judge Moynihan, concluded that Petitioner failed to show counsel did not consult with him in a meaningful manner.  Petitioner has not presented clear and convincing evidence to refute this factual finding by the state court, and the trial transcript does not support his contention because it reflects that defense counsel was well prepared for trial.  In fact, Petitioner was not convicted on all counts.  *See Miller-El*, 537 U.S. at 348 ("to secure habeas relief, petitioner must demonstrate that a state court's finding was incorrect by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and that the corresponding factual determination was "objectively unreasonable" in light of the record before the court.")  Therefore, Petitioner is not entitled to habeas relief on this claim.

### c.   Failure to elicit evidence of Petitioner's boil

Petitioner contends his counsel should have presented evidence that Petitioner had a boil or growth on his hip, which the victims would have noticed if they had seen him naked.  *State v. Smith*, 2012 WL 4036697, at *4.[2]  Petitioner's theory is that if the victims denied seeing the boil,

---

[2] Petitioner testified that he had the growth removed in 1998, leaving a scar.

they were lying that he had sexually assaulted them.  *Id.*  The Appellate Division addressed this claim:

> [C]ounsel testified at the evidentiary hearing that when he asked defendant for witnesses who could verify the existence of the scar or boil, defendant was unable to name any and there were no other means to corroborate defendant's statement that it existed. Although defendant contended at the PCR hearing that such corroboration was available through certain witnesses whom he identified to counsel, he produced no certifications, medical records, or other evidence to show that such corroboration existed.
>
> Judge Moynihan described counsel's testimony regarding his weighing of the possible positive and negative consequences of pursuing this issue in the absence of any corroboration and concluded, properly, that counsel made a strategic decision in declining to pursue this issue. "In determining whether defendant has met the first prong of the *Strickland/Fritz* test, [we] will not second-guess defense counsel's trial decisions which rest upon strategic or tactical considerations." *State v. Castagna*, 376 N.J.Super. 323, 360 (App.Div.2005), *rev'd*, 187 N.J. 293 (2006) (citing *Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. l691, 1697, 48 L. Ed.2d 126, 135 (1976); *State v. Buonadonna*, 122 N.J. 22, 38 (1991)).

*Id.* at *4.

The PCR record shows that defense counsel feared they would be unable to establish that the boil existed at the time of the sexual assaults, and even if they could, many of the allegations involved the defendant doing things to the victims when defendant was clothed, rendering the boil irrelevant.  (ECF No. 13-7 at 7, 14, 16, 21-22.)  Defense counsel felt that without corroboration that the boil existed at the time the victims may have seen the defendant's left hip, the jury might have thought it was "a reach" or "a defense scenario" created by the defendant without corroboration, and held it against him.  (*Id.* at 22, 33.)

There is no question based on defense counsel's PCR testimony that counsel made a strategic decision not to present the issue of Petitioner's boil at trial.  The only question is whether

the PCR Court reasonably determined that counsel's strategic decision was a reasonable exercise of professional judgment under *Strickland*. *See Wood v. Allen*, 558 U.S. 290, 304 (2010) (describing difference between whether state court erred in determining facts or erred in applying the law). Defense counsel's PCR testimony indicates that he asked Petitioner to provide a witness who could establish the presence of his boil during the relevant time, and Petitioner did not provide the names of any witnesses or any medical evidence. (ECF No. 13-7 at 7.) Similarly, at the PCR hearing, Petitioner failed to corroborate his testimony that there was a witness who could testify about the presence of a boil on his hip at the time of the crimes. Therefore, the PCR Court reasonably determined that counsel exercised reasonable professional judgment in not pursuing the issue of Petitioner's boil. The Court will deny this ineffective assistance of counsel claim.

d.    Failure to object to jury charge

In his PCR proceeding, Petitioner claimed his counsel was ineffective for failing to object to the jury charge regarding the elements of aggravated sexual assault and contact. The Appellate Division held that the issue was procedurally barred because the issue was raised and decided on direct appeal. *State v. Smith*, 2012 WL 4036697, at *5. The Appellate Division also noted it had previously held the instruction was sufficient. *Id.*

Even if this Court were to reach the merits of Petitioner's procedurally barred PCR claim, Petitioner was not prejudiced by his counsel's failure to object to a jury instruction that was found by the Appellate Division to sufficiently instruct the jury on the charges. *See Keller v. Larkins*, 251 F.3d 408, 419 (3d Cir. 2001) (rejecting ineffective assistance of counsel claim where defendant was not prejudiced by counsel's failure to object to testimony that would have been admitted at trial even if counsel had objected). Therefore, Petitioner cannot establish prejudice under *Strickland*, and he is not entitled to relief on his habeas claim.

e. <u>Failure to file requested pretrial motions</u>

At the PCR hearing, Petitioner testified that he asked counsel to file a pretrial motion for severance of trials for the five victims, and a motion to dismiss based on speedy trial grounds. *State v. Smith*, 2012 WL 4036697, at *5. The Appellate Division denied the ineffective assistance of counsel claim, stating:

> Judge Moynihan reviewed the legal principles applicable to the severance motion and concluded there were numerous grounds to justify joinder. Defendant was tried within nine months of his indictment and cited no prejudice he suffered because he had not been tried within one hundred and eighty days of indictment. Judge Moynihan observed that defendant failed to produce any evidence of the four factors applicable to the determination whether an indictment should be dismissed on speedy trial grounds. *See Barker v. Wingo*, 407 U .S. 514, 530, 92 S.Ct. 2182, 2192, 33 L. Ed.2d 101, 117 (1972) (identifying the four factors as the "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant"); *State v. Long*, 119 N.J. 439, 470 (1990). We concur with Judge Moynihan's conclusion that, even if these motions had been filed, the record fails to show that they enjoyed any likelihood of success and therefore, the second prong of the *Strickland–Fritz* test was not satisfied.

*Id.*

The Appellate Division applied the correct standard for ineffective assistance of counsel claims under *Strickland,* and reasonably applied the law by finding no prejudice based on failure to file motions that would have been denied. *See Johnson v. Tennis*, 549 F.3d 296, 301-02 (3d Cir. 2008) (finding counsel was not ineffective for failing to make pretrial motion for severance where it was unlikely that the trial court would have granted severance given the strong interest in maintaining joint trials); *see also Vanlier v. Carroll*, 384 F. App'x 155, 159 (3d Cir. 2010) (finding counsel was not ineffective for failing to file a motion to dismiss where there was no merit to the speedy trial issue). Therefore, the Court will deny this habeas claim.

PCR Claims in pro se supplemental brief

On PCR review, the Appellate Division summarily dismissed the claims in Petitioner's pro se supplemental brief.  Petitioner's pro se supplemental brief (ECF No. 13-3), much like the unstructured portion of his Amended Petition before this Court (ECF No. 3), is a rambling, stream of consciousness recitation of unsupported allegations, including accusations that the court reporters failed to transcribe court dates and purposefully removed sworn testimony of witnesses; the trial judge lied about witnesses on the defense list; the trial court, prosecutor and defense counsel lied when they said they couldn't find A.H because an arrest report proves he was in Essex County Jail at the time of trial under the name Jokye Blount; the prosecutor tampered with the grand jury minutes to hide that A.H. gave testimony before the grand jury; the prosecutor failed to turn over exculpatory evidence; and Assistant Prosecutor Sara B. Liebman acknowledged that B.H. lied at trial, and Liebman admitted to several felony acts by Prosecutor Holmes.[3]

The PCR Court briefly addressed certain of Petitioner's pro se claims.  When a higher state court does not give reasons for denying a federal claim, a habeas court may "look through" to the lower court's explanation for denying the claim.  *Ylst*, 501 U.S. 797, 804 (1991).

f.      Brady Violation

Petitioner alleged prosecutorial misconduct violated his due process right to a fair trial based on the failure to turn over statements taken by law enforcement officers, and other exculpatory evidence.  (ECF No. 12-7 at 22.)  The PCR Court held:

---

[3] The Court will not address each and every unsupported claim of conspiracy and criminal acts Petitioner alleged against the trial judge, court reporters, prosecutors, witnesses, and defense counsel.   The Court has reviewed the entire record and submissions of the parties in this matter and will address only those claims with any factual support in the record, and all claims addressed by the Appellate Division on direct appeal, and by the PCR Court and the Appellate Division on PCR review.

> Even after the trial file was turned over to PCR counsel in an effort
> to substantiate Petitioner's claim, Petitioner did not present the PCR
> Court with any proof as to the existence of any statements or
> exculpatory evidence withheld by the State.  "there is nothing before
> this court save for another bald-faced allegation by petitioner."

(*Id.*)

To prove a *Brady* violation, a petitioner must establish three elements:  (1) the evidence is favorable to the accused because it is exculpatory or impeaching; (2) the evidence was suppressed by the State willfully or inadvertently; and (3) the evidence was material "such that prejudice resulted from its suppression."  *Dennis v. Secretary, Pennsylvania Dept. of Corr.*, 834 F.3d 263, 284-85 (3d Cir. 2016) (quoting *Strickler v. Greene*, 527 U.S. 263, 282 (1999)).

The PCR Court reasonably applied clearly established federal law by rejecting Petitioner's *Brady* claim because he failed to present any evidence of the existence of exculpatory evidence withheld by the State.  Therefore, the Court will deny this claim.

g. <u>Claims previously raised on direct appeal</u>

In his pro se supplemental PCR brief, Petitioner raised the issue of the jury's exposure to the news article containing a photograph showing him in handcuffs, and of T.S.'s incorrect pretrial testimony about his age.  (ECF No. 12-7 at 25.)  The PCR Court found that Petitioner was barred from raising these claims under New Jersey Rule 3:22-5 because they were raised and denied on direct appeal.  (*Id.* at 26.)

When a state court decision plainly states that is relying on an independent and adequate state law ground to deny a federal claim, a habeas court may not reach the merits of the federal claim.  *Coleman v. Thompson*, 501 U.S. 722, 737 (1991); *Walker v. Martin*, 562 U.S. 307, 316 ("[t]o qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and

regularly followed'") (quoting *Beard v. Kindler*, 558 U.S. 53, 130 S.Ct. 612, 618 (2009) (internal quotations marks omitted)).

New Jersey Rule 3:22-5, which procedurally bars claims that have already been raised and addressed on direct appeal, is an independent and adequate state law ground to bar habeas review. The rule is clearly established and regularly followed in New Jersey. *See State v. McQuaid*, 147 N.J. 464, 484 (1997) ("[i]f the same claim is adjudicated on the merits on direct appeal a court should deny PCR on that issue, thereby encouraging petitioners to raise all meritorious issues on direct appeal."). Therefore, this Court will deny Petitioner habeas relief on these claims.

h.      Testimony regarding the Pop Warner jacket

Petitioner also argued in his pro se supplemental PCR brief that he was prejudiced because counsel did not object to evidence of a Pop Warner jacket, which was used to verify the year A.W. played football.  (ECF No. 12-7 at 26.)  The PCR Court addressed this claim:

> Hearsay evidence from the back of the jacket was used to bolster A.W.'s memory that he played on the team in 1992.  Defense counsel did not ask for the testimony to be stricken, only that the jacket not go into evidence.  The next day, the trial court advised that it would strike the testimony regarding the jacket.  Defense counsel indicated that for strategic reasons, he thought the testimony should not be stricken.  Defense counsel cross-examined A.W.'s mother about the jacket.

(*Id.* at 26.)  The PCR Court found counsel was not ineffective because "strategic decisions must not be viewed in hindsight." (*Id.* at 27.)  Additionally, Petitioner could not show prejudice because "it cannot be reasonably said that A.W. was not 12 years old in August 1992" and "Petitioner was found not guilty of all charges related to A.W." (*Id.*)

The PCR Court applied the *Strickland* prejudice test in an objectively reasonable manner by deciding that evidence of the Pop Warner jacket did not prejudice Petitioner, who was found not guilty of all charges related to A.W.  The Court will deny this habeas claim.

i.     Whether the trial court fired defense counsel and refused to permit a defense witness to testify

In his pro se supplemental brief on PCR, Petitioner claimed that the trial judge fired his defense counsel and later refused to permit the defense to call DeWarren Watkins as a witness. (*Id.* at 27.)  The PCR judge, who was also the trial judge, said that he never fired anyone, and he never made a ruling excluding DeWarren Watkins as a witness.  (*Id.*)

Factual determinations by a state court are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The trial transcript does not support Petitioner's claims, and Petitioner has not presented anything other than his own self-serving claims that these events occurred at trial.  Petitioner has not presented clear and convincing evidence to rebut the finding that the trial judge did not fire Petitioner's counsel and did not exclude DeWarren Watkins as a defense witness.  Therefore, the Court will deny this habeas claim.

j.     Cumulative errors of trial counsel

Finally, in his pro se supplemental PCR brief, Petitioner claimed the cumulative effect of his trial counsel's errors prejudiced the outcome of his trial.  (ECF No. 12-7 at 27.)  The PCR Court denied this claim because "there were no errors to speak of."  (*Id.*)  As discussed above, the PCR Court correctly applied the *Strickland* standard to Petitioner's ineffective assistance of counsel claims.  It was objectively reasonable for the PCR Court to conclude that where there were no instances of ineffective assistance, there could be no cumulative effect of prejudice.  Therefore, the Court will deny Petitioner's final ineffective assistance of counsel claim.

IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §

2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327.

As shown by the discussion of Petitioner's claims for habeas relief, Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will deny a certificate of appealability.

V.    CONCLUSION

For the reasons discussed above, this Court will deny the motion to compel a hearing date, deny the Amended Petition for habeas relief under 28 U.S.C. § 2254, and deny a certificate of appealability.

An appropriate Order follows.

Date: December 30, 2016                          s/ John Michael Vazquez
At Newark, New Jersey                            JOHN MICHAEL VAZQUEZ
                                                 United States District Judge